UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY AMAKER,

                      **Plaintiff,**

        **-v-**                                                                                   10-CV-88(Sr)

**BRIAN S. FISCHER, et al.,**

                      **Defendants.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this matter to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. #27.

Plaintiff commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional right to due process, religious freedom, free speech and access to the courts during his incarceration at the Elmira Correctional Facility ("Elmira"), and the Southport Correctional Facility ("Southport"), and challenging the constitutionality of New York State Department of Corrections & Community Supervision (DOCCS'"), Directive 4913. Dkt. #1 & Dkt. #8.

Currently before the Court is a motion to dismiss (Dkt. #16), defendants Karen Bellamy, Brian Fischer and Lucien LeClaire from this action, and plaintiff's motion to file a second amended complaint to add P. Jaynes as a defendant in this

action. Dkt. #28.  For the following reasons, the motion to amend is granted and the motion to dismiss is granted as to Karen Bellamy and granted in part as to Brian Fischer and Lucien LeClaire.

**Motion to Amend Complaint**

Although Fed. R. Civ. P. 15(a) generally governs the amendment of complaints, where the proposed amendment seeks to add new defendants, Fed. R. Civ. P. 21 governs.  *Rush v. Artuz*, No. 00 CIV 3436, 2001 WL 1313465, at *5 (S.D.N.Y. Oct. 26, 2001).  Rule 21 states that "[p]arties may be . . . added by order of the court on motion of any party . . . at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.  "In deciding whether to allow joinder, the Court is guided by the same standard of liberality afforded to motions to amend pleadings under Rule 15."  *Rush*, 2001 WL 1313465, at *5 (internal quotation omitted); *see Clarke v. Fonix Corp.,* No. 98 CIV 6116, 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999), *aff'd* 199 F.3d 1321 (2d Cir. 1999).

Fed. R. Civ. P. 15(a) provides that a party may amend a pleading by leave of court or by written consent of the adverse party.  Leave to amend is to be "freely granted" unless the party seeking leave has acted in bad faith, there has been an undue delay in seeking leave, there will be unfair prejudice to the opposing party if leave is granted, or the proposed amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); Fed. R. Civ. P.15(a).  An amendment is futile if it cannot survive a

motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000).

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Plaintiff alleges that, on February 16, 2010, during an inventory of plaintiff's personal property at Southport, Corrections Officer ("C.O."), Jaynes refused to allow plaintiff to take copies of The Final Call religious newspaper to his cell.  Dkt. #28-1, ¶ 25.  As plaintiff was preparing to depart Southport on May 14, 2010, plaintiff alleges that C.O. Jaynes separated plaintiff's religious books and books authored by plaintiff into a separate draft bag and then advised plaintiff that he was over the limit for draft bags, thereby preventing plaintiff from possessing his religious materials.  Dkt. #28-1, ¶¶ 26 & 30.  Following plaintiff's return to Southport on June 14, 2010, plaintiff alleges that C.O. Jaynes withheld legal and religious materials from plaintiff and threatened to destroy legal work which had been in storage at Southport since June of 2009.[1]  Dkt.

---

[1] By Decision and Order entered on June 23, 2010, this Court denied plaintiff's motion for a preliminary injunction enjoining defendants from enforcing DOCCS' Directive 4913, which

#28-1, ¶¶ 27-29.  Plaintiff further alleges that C.O. Jaynes intentionally sent a draft bag of plaintiff's personal property to another facility in retaliation for Magistrate Judge Homer's Order directing officials at Southport to forward plaintiff's legal papers to the Northern District of New York for plaintiff's use at trial. Dkt. #28-1, ¶ 28.  Plaintiff also alleges that C.O. Jaynes intentionally destroyed plaintiff's typewriter so as to deprive plaintiff of his ability to communicate with the court.  Dkt. #28-1, ¶¶ 29-30.  Plaintiff alleges that C.O. Jaynes behaved this way to retaliate against plaintiff for challenging regulations limiting the number of draft bags of personal property which could be transferred from facility to facility.  Dkt. #28-1, ¶ 28.  As these allegations state a plausible violation of plaintiff's First Amendment rights, plaintiff's motion to amend (Dkt. #28), is granted.

**Motion to Dismiss**

Commissioner Brian Fischer, Deputy Commissioner Lucien J. LeClaire, and Director of the Inmate Grievance Program ("IGP Director"), Karen Bellamy, move to dismiss the complaint for lack of personal involvement.  Dkt. #16.

It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983.

---

limits the volume of an inmates' legal work product upon transfer to another correctional facility, and directed DOCCS to afford plaintiff an opportunity to sort through his five draft bags of legal materials to cull one draft bag of legal materials to retain and to dispose of the remaining materials in accordance with the provisions of DOCCS Directive 4913. 07-CV-279 at Dkt. #87. The Court subsequently directed that plaintiff's excess legal materials be retained at Southport pending resolution of plaintiff's appeal. 07-CV-279 at Dkt. #95 & Dkt. #110.  On December 20, 2011, the Court of Appeals for the Second Circuit affirmed the denial of the preliminary injunction. 07-CV-279 at Dkt. #146; *Amaker v. Fischer*, 453 Fed. App'x 59 (2d Cir. 2011).

*Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir. 1989).  Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873.[2]  "There is no *respondeat superior* liability in § 1983 cases." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Thus, supervisory officials may not be held liable merely because they hold a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

In opposition to the motion to dismiss, plaintiff declares that he sent "direct letters to Mr. Fischer" in 2009 regarding the denial of religious accommodations during Ramadan,[3] and that Commissioner Fischer forwarded his complaints to Deputy Commissioner LeClaire, who failed to properly investigate.  Dkt. #24, ¶ 1.  As these allegations precede the time frame of the complaint, which address events beginning on November 30, 2009 (Dkt. #28-1, ¶ 7), they cannot be used to assert the personal

---

[2] Although recognizing that the Supreme Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," the Court of Appeals has yet to resolve that issue. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

[3] In 2009, Ramadan was observed from August 21st through September 19th.

involvement of Commissioner Fischer or Deputy Commissioner LeClaire in the constitutional violations alleged in this complaint.

Plaintiff's second amended complaint alleges that, on December 10, 2009, Commissioner Fischer was notified of defendants' reliance upon a Central Office Review Committee ("CORC"), decision[4] to deny plaintiff his right to attend Nation of Islam services and to be free from punishment for wearing dreadlocks despite a preliminary injunction[5] prohibiting such conduct. Dkt. #28-1, ¶ 10. More specifically, plaintiff alleges that IGP Director Bellamy provided C.O. Nowaczyk with a copy of a CORC decision which was used to justify the misbehavior reports dated November 30, 2009 and December 10, 2009. Dkt. #28-1, ¶¶ 7- 8. In opposition to the motion to dismiss, plaintiff declares that Deputy Commissioner LeClaire and IGP Director Bellamy are involved in issuing, implementing and disseminating decisions from CORC, which functions under the authority of Commissioner Fischer. Dkt. #24, ¶¶ 4-7. Thus, plaintiff argues that Commissioner Fischer, Deputy Commissioner LeClaire and IGP Director Bellamy were personally involved in the use of the Altona CORC decision to violate

---

[4] On or about September 30, 2009, CORC issued a decision regarding an inmate at the Altona Correctional Facility ("Altona"), which "asserts that only inmates of the Rastafarian faith may have dreadlocks" and "that staff have correctly directed the grievant to remove his dreadlocks, or change his religious designation, in accordance with Department policy." 06-CV-490 at Dkt. #297, p.6.

[5] In 06-CV-490, the Hon. William M. Skretny entered a preliminary injunction dated December 18, 2007, enjoining DOCCS' defendants from punishing plaintiff for refusing to cut his hair or refusing to change his religious affiliation and from precluding plaintiff's attendance at Nation of Islam services and classes because of his dreadlocks. 06-CV-490 at Dkt. #115. On June 23, 2010, the Hon. Richard J. Arcara made the preliminary injunction permanent and awarded plaintiff summary judgment on his cause of action alleging a violation of free exercise rights pursuant to the First Amendment of the United States Constitution. 06-CV-490 at Dkt. #245.

plaintiff's right to attend Nation of Islam services despite their knowledge[6] of the preliminary injunction contravening the Altona CORC decision.  Dkt. #23, pp.2-3 & 6; Dkt. #24, ¶ 8.  As these allegations mirror conduct for which plaintiff has already received an award of damages for contempt of the preliminary injunction and injunction, defendants' motion to dismiss is granted with respect to these allegations.

In opposition to the motion to dismiss, plaintiff declares that Commissioner Fischer forwarded several letters from plaintiff complaining of the failure of CO Nowaczyk and CO Titus to file plaintiff's grievances to IGP Director Bellamy. Dkt. #24, ¶¶ 2-4.  Plaintiff also declares that he mailed a grievance to Commissioner Fischer following an incident on November 5, 2009, and that Commissioner Fischer forwarded the grievance to Karen Bellamy, who forwarded it to Elmira.  Dkt. #23, p.4 & Dkt. #34, ¶ 4.  In light of the general rule that an official who receives a letter from an inmate and passes it on to a subordinate for response or investigation will not be deemed personally involved with respect to the subject matter of the letter, these allegations fail to plausibly allege a constitutional violation.  *See Rivera v. Fischer*, 655 F. Supp.2d 235, 238 (W.D.N.Y. 2009) (collecting cases).

Plaintiff also alleges that Commissioner Fischer hired Commissioner's Hearing Officer ("CHO"), James Esgrow, who was appointed by Superintendent Bradt

---

[6] By Decision and Order entered October 3, 2012, the Hon. Richard J. Arcara adopted this Court's Report, Recommendation and Order (06-CV-490 at Dkt. #297), finding DOCCS' employees, including the Commissioner and Deputy Commissioner LeClaire, in contempt of the Court's preliminary injunction and injunction and awarding plaintiff $19,600.00. In the contempt proceeding, the parties stipulated that the Attorney General's Office faxed and mailed the preliminary injunction order to the Commissioner on December 18, 2007.  06-CV-490 at Dkt. #297, p.4.

to conduct a Tier III disciplinary hearing regarding the misbehavior reports regarding plaintiff's refusal to either change his designated religion or remove his dreadlocks. Dkt. #28-1, ¶ 11.  This is insufficient to plausibly allege Commissioner Fischer's personal involvement in CHO Esgrow's alleged denial of due process during the course of plaintiff's disciplinary hearings.

Plaintiff's second amended complaint alleges that plaintiff wrote Commissioner Fischer on February 17, 2010, presumably regarding the withholding of his legal work pursuant to Directive #4913.  Dkt. #28-1, ¶ 20. Plaintiff alleges that Directive #4913 is being used to arbitrarily search personal property and that it is unconstitutional as applied to him.  Dkt. #28-1, ¶ 31.  During the course of briefing of plaintiff's motion for a preliminary injunction regarding Directive #4913, defendants submitted copies of a Memorandum dated October 23, 2008 which was drafted by Commissioner Fischer explaining the new policy.  07-CV-279 at Dkt. #81, p.16. Defendants also submitted copies of the Directive, dated October 23, 2008, which is signed by Deputy Commissioner LeClaire as the "Approving Authority."  07-CV-279 at Dkt. #81, p.8.  These documents are sufficient evidence of Commissioner Fischer and Deputy Commissioner LeClaire's personal involvement in the implementation of an allegedly unconstitutional policy as to preclude their dismissal from this action.

**CONCLUSION**

For the reasons set forth above, the motion (Dkt. #16), to amend the complaint to add C.O. P. Jaynes as a defendant is granted.  Furthermore, the motion to

dismiss (Dkt. #28), is granted as to IGP Director Karen Bellamy and granted as to Commissioner Fischer and Deputy Commissioner LeClaire  except with respect to plaintiff's allegations that Commissioner Fischer and Deputy Commissioner LeClaire were personally involved in the implementation of the allegedly unconstitutional Directive #4913.

      The Clerk of the Court is directed to terminate Karen Bellamy as a defendant in this action; file plaintiff's proposed amended complaint (Dkt. #28-1), as a second amended complaint; and take the necessary steps to effect service of the second amended complaint upon C.O. P. Jaynes at Southport.

      **SO ORDERED.**

**DATED:**    **Buffalo, New York**
              **November 16, 2016**

                                     s/ H. Kenneth Schroeder, Jr.
                                     **H. KENNETH SCHROEDER, JR.**
                                     **United States Magistrate Judge**